IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DOUGLAS CANAS and VANESSA MESCHINO, on behalf of themselves and all other plaintiffs similarly situated, | ) ) ) ) | Case No.: 1:20-cv-04937 |
| Plaintiffs, | ) ) ) | Hon. Judge John Robert Blakey |
| v. | ) ) | Mag. Judge Sunil R. Harjani |
| SMITHFIELD PACKAGED MEATS CORP., SMITHFIELD FRESH MEATS CORP., AND KANSAS CITY SAUSAGE COMPANY, LLC. | ) ) ) ) ) | |
| Defendants. | | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND FOR
CERTIFICATION OF CLAIMS PURSUANT TO F. R.C.P.23 FOR SETTLEMENT**

Plaintiffs Douglas Canas and Vanessa Meschino ("Plaintiffs"), on behalf of themselves

and all others similarly situated, for this Unopposed Motion for Preliminary Approval of Class

Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 for Settlement

of their claims against Smithfield Packaged Meats Corp., Smithfield Fresh Meats Corp., and

Kansas City Sausage Company, LLC (collectively, "Smithfield") state as follows:

## I. INTRODUCTION

Smithfield, one of the nations' largest pork producers, wanted to increase its employees'

compensation during the Covid-19 Pandemic. To do this, Smithfield paid its employees a $500

payment in May 2020 (a "Responsibility Bonus"). It also paid its workforce extra hourly

compensation for the first 40 hours they worked per week for several months thereafter (referred

to as "Responsibility Pay").

1

Plaintiffs' lawsuit alleges that the Responsibility Pay and Responsibility Bonus should have been factored into its employees' overtime rates. Smithfield disagrees. Rather than fighting over these issues for many years during prolonged litigation, the Parties reached a resolution during a settlement conference that was held with Magistrate Judge Sunil R. Harjani on February 2, 2021.

By this Motion, Plaintiffs seek preliminary approval of a $7.75 million settlement for over 30,000 Smithfield workers who were allegedly underpaid for their overtime when they worked during the COVID-19 Pandemic. This amount represents *more* than a full recovery (approximately 102%) of the base wages that the Fair Labor Standards Act (FLSA) putative class would have earned had they been properly paid according to the Plaintiffs' allegations. Those who worked in Illinois will also receive an allocation representing 100% of their alleged base damages because of additional damages available under the Illinois Minimum Wage Law ("IMWL"), so long as they do not exclude themselves from the IMWL Class.

For the reasons below, Plaintiffs request this Court enter an order, in the form attached hereto as Exhibit 1, that (1) grants preliminary approval of the Proposed Class Action Settlement (attached hereto as Exhibit 2) so that notice can be sent out to see if there are objections; (2) certifies the Class for settlement purposes only; (3) approves the proposed Notice; and (4) sets a hearing date for Final Approval of Settlement. In support of this motion, Plaintiffs state as follows:

## II. OVERVIEW OF CLAIMS

Plaintiffs allege Smithfield did not properly calculate its employees' regular rate of pay for overtime purposes. Specifically, Plaintiffs claim Defendants failed to include the Responsibility Bonus and Responsibility Pay when computing employees' overtime rates of pay, resulting in

employees being paid an overtime rate that was too low and depriving them of earned wages in violation of the FLSA and the IMWL.

Smithfield denied Plaintiffs' allegations and, to the contrary, contends that the additional compensation were gifts and/or discretionary bonuses to recognize employees for working and overcoming difficult circumstances--and therefore did not qualify as compensation that factored into the overtime rate. Smithfield pointed out that it paid its Responsibility Bonus to thousands of workers who performed <u>no</u> work at all and therefore it was more akin to a discretionary payment or a gift. It also argued that, after examining Smithfield's Responsibility Bonus in one of its plants, a United States Department of Labor investigator opined that the bonus did not need to be included in the overtime rate.[1]

While Plaintiffs were confident in their claims, there was some uncertainty because an adverse ruling on these or other issues could result in Plaintiffs receiving no damages whatsoever. *See* 29 U.S.C. § 207(e)(1) and 29 U.S.C. § 207(e)(3). And, with a DOL investigator's opinion supporting their position, along with the unchartered waters of operating in an unprecedented Pandemic, Smithfield would likely argue that it acted in good faith pursuant to 29 U.S.C. § 259.

What's more, Smithfield also would likely argue against certification because this case involved dozens of different plants, different Smithfield entities, different pay structures, and both union and non-union employees.

---

[1] The USDOL investigator found: "The firm paid a temporary bonus that was considered to be discretionary. . . . the bonus was not measured by or dependent upon hours worked and was provided during the challenging and stressful situation created by the pandemic. In addition, it was noted in the payroll records that employees received the bonus even when they reported no hours worked in a pay period." The redacted USDOL records are attached as Exhibit 3.

## III. SUMMARY OF SETTLEMENT TERMS

A copy of the Parties' Settlement Agreement and Release (the "Settlement Agreement") is attached as Exhibit 2. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms:

Putative Class Counsel reviewed Smithfield's payroll records and computed individual damage computations for each of the 30,000+ individuals impacted by the settlement. Defendants have agreed to pay a maximum of $7,750,000 into a settlement fund (referred to as the Gross Settlement Fund in the Parties' Settlement Agreement). The Settlement Fund's allocations are compromised as follows:

**1)** **FLSA And Illinois Rule 23 Class Members Are Allocated Over 100% of Alleged Unpaid Overtime Wages.**

Alleged overtime damages[2] were calculated from Smithfield's payroll data from April 1, 2020 through October 31, 2020 (*i.e.* during the period the Responsibility Bonus and Pay was earned). As explained above, Plaintiffs allege that Smithfield miscalculated the overtime owed to the named Plaintiffs and each additional Class Member by failing to capture all compensation when calculating the regular rate of pay for overtime purposes during a portion of the COVID-19 Pandemic.

Class Counsel computed overtime damages, which includes a minimum gross floor of $38.70 for each FLSA and Illinois Rule 23 Class Member.[3] FLSA and Illinois Rule 23 Class Members will receive gross settlement awards above their computed overtime damages because

---

[2] For an explanation as to the computation of alleged overtime damages see Affidavit of John Kunze attached as Exhibit 4.
[3] In other words, if a FLSA or IMWL Class Member's alleged damages were between $.01 and $38.70, that person will receive a gross payment of $38.70.

the combined overtime damages of the FLSA and Illinois Rule 23 Class amounts to $7,600,920.56 and Gross Settlement Fund is $7,750,000.[4]  As explained further down below, the Illinois Rule 23 Class can receive twice their overtime damages because they can recover under the Rule 23 Illinois Class and also opt into the FLSA Collective.

The allocations are fair among the class members: they are based on (a) the amount of Responsibility Bonus/Responsibility Pay received and (b) the amount of overtime worked.  In other words, the more the person worked, and the more compensation they received, the higher the payment--which is consistent with how Plaintiffs allege they should have been paid.   Unlike the Rule 23 Illinois class described below, because the FLSA requires members to opt-in to a case, Class Members must opt into this case by submitting a claim to be bound by the settlement.

FLSA Class Members appear on Exhibit 1 of the Settlement Agreement along with an estimate of each Member's net payment, as described in the Settlement Agreement.[5]

### 2) <u>Illinois Employees Will Also Receive Settlement Awards Under the Rule 23 Class, in Addition to FLSA Awards</u>.

The Parties agreed to create a Rule 23 Class to settle the claims of approximately 2,412 Illinois-based Smithfield employees.   The amount allocated to these individuals is approximately $589,252.96under the Illinois Rule 23 class and they will automatically receive payment so long as they do not opt out of the Illinois Rule 23 class.  As described above, this amount represents

---

[4] This results in FLSA and Illinois Rule 23 Class Members, on a whole, receiving gross awards of approximately 102% of their alleged overtime damages. ($7,750,000/$7,600,920.56 = 101.96%) before accounting for Attorney Fees and Costs, Service Awards, Administrator Fees, the Reserve Fund, and taxes.

[5] Exhibit 1 and 2 to the Settlement Agreements reflect estimated net settlement payments to the FLSA and IMWL class, respectively, for purposes of the Settlement Agreement and Notice. This is based on an estimated net recovery of 64.58% for each FLSA and IMWL Class Member. This percentage represents the estimated recovery after accounting for Attorney Fees and Costs, Service Awards, Administrator Fees, the Reserve Fund, and estimating $100,000 in FICA taxes on 60% FLSA opt-in rate. The actual net payments will be calculated by the Settlement Administrator.

more than their claimed overtime base wages, and, the minimum any IMWL Class Member will receive is the gross amount of approximately $38.70.

Illinois workers are *also* eligible to opt into the FLSA Settlement because they have claims under both federal and state law (the FLSA and the IMWL). Thus, an Illinois Class Member who opts into the FLSA settlement will receive both their FLSA Award and Rule 23 Illinois Award. The Illinois workers are allocated this share because the IMWL allows for treble damages plus interest and, therefore, their claims were more valuable. 820 ILCS 105/12(a).

If Illinois-based workers chose not to opt into the FLSA settlement, Illinois employees retain their FLSA claims even if they settle their IMWL claims. See Ex. 2, ¶40 ("Illinois Class Members who do not execute and return Claim Forms release all such claims, except claims under the FLSA …"). The Illinois Class Members are listed on Exhibit 2 to the Settlement Agreement, along with estimated net awards, as described in the Settlement Agreement.

By way of example, IMWL Class Member 100307's alleged unpaid overtime is $276.69, this represents her Illinois award. Her FLSA award is also $276.69. This employee, like all Illinois Rule 23 Class Members, is a potential member of the FLSA Class, thus, if this employee files an FLSA claim and does not exclude herself from the Illinois Class she will receive both the Illinois and the FLSA award: a combined gross of $553.38 before accounting for attorney fees and costs, administrator fees, service awards and taxes   However, if she does not file an FLSA claim and does not exclude herself from the IWML Class, she will only receive the Illinois award of $276.69 (before attorney fees and costs, etc.) but will not have released any of her FLSA claims. The gross average Illinois Class Members' award is $244.30, of course, they will receive an additional equal amount if they file an FLSA claim form.

### 3)      The Release of Liability

Plaintiffs negotiated a narrow release tied to the claims at issue in this case. FLSA Class Members are not providing a general release. Instead, they are only providing a release of their wage claims. In addition, the release is limited to the approximately 6-month period when the Responsibility Bonus and Responsibility Pay was earned. If FLSA Class Members do not choose to opt into this case, they retain all of their legal rights, are not bound by the Settlement Agreement, and are free to pursue their own claims. See Ex. 2. ¶39.

### 4) **Settlement Payment Schedule, Payout, and Allocation:**

To effectuate this Settlement, Smithfield has agreed to make a payment into a Qualified Settlement Fund ("QSF") as detailed in paragraph 59 and 61 of Exhibit 2. After the Settlement's Effective Date, the Defendants shall pay the amounts attributable to the FLSA Class Members (*i.e.,* the payments attributed to those who opt into the FLSA settlement) and the Illinois Class Members along with other approved expenses such as attorneys' fees and costs, service awards, etc. The Settlement Administrator will be directed to distribute the Settlement Awards to FLSA Class Members and IMWL Class Members.

For tax purposes, 50% of the FLSA payment to each Class Member shall be treated as back wages, subject to employee payroll taxes and withholdings, and 50% will be treated as liquidated damages, not subject to payroll taxes and withholdings. As the FLSA is an opt-in statute, FLSA Settlement Members must join into the case to receive their allocation but if they do not do so, they are not releasing their claims. As the IMWL claims are being settled under Rule 23, Illinois

workers who do not opt-out of the IMWL Class are automatically mailed their allocation for damages under the IWML.[6]  See Ex. 2, ¶60.

Some Class Members only worked a very short period of time, or worked little overtime, and they have a small damage amount allocated to them.  To maximize cash checking and participation in the lawsuit, for those with damages between $0.01 and $ 38.70, a gross $38.70 floor is created.  In other words, the minimum gross award any FLSA or Illinois Class Member will receive is $38.70 before reductions for fees and costs.[7]  See Ex. 2, ¶38(f)(3)(c)-(4)(c).

   5)    **Reserve Fund:**        Approximately $20,000 of the Gross Settlement Fund will be set as a Reserve Fund to cover any errors, omissions, or resolve disputed claims.  Any unused portion of the Reserve Fund will be donated to Feeding America's Covid-19 Response Fund. Feeding America is the nation's largest domestic hunger-relief organization and has a network of 200 food banks.[8]

---

[6] Per the Settlement Agreement, at least 60% of the Net Settlement Fund will be paid to FLSA and IMWL members.  As such, the amount per FLSA Class Member could increase.  For example, if less than 60% of the Net Settlement Fund remains after FLSA claims and IMWL payments are accounted for, then the difference between the amount awarded and 60% of the Net Settlement Fund will be allocated proportionately (based on their original FLSA award) across the FLSA members who opted into the case. For example, if only 40% of the Net Settlement Fund is allocated for, then 20% of the Net Settlement Fund would be re-allocated proportionately across the FLSA members who opted into the case. This would result in FLSA members receiving *more than* 103% of their available damages.  See Ex. 2, ¶38(g)(3)(f).

[7] After this floor, remaining funds in the QSF after payments to the FLSA and Illinois Class members, attorney fees and costs, service awards, settlement administrator fees and costs and any donated portion of the reserve fund, will be returned to, or not paid out, by Defendants. See Ex. 2, ¶38(g)(3)(f).

[8] Establishes COVID-19 Response Fund | Feeding America

6)     **Claims Administrator Fees and Costs**:  The parties have agreed to use Simpluris as the Settlement Claims Administrator.   The Administrator's anticipated expenses are approximately $120,800.00.

7)     **Attorney Fees**:        At the final approval hearing, Class Counsel will request one-third of the Settlement Fund as an award of attorney's fees plus reimbursement of case-related costs and expenses as allowed by the Settlement Agreement.   See Ex. 2, ¶38(e)

8)     **Service Award:**        At the final approval hearing, Plaintiffs Canas and Meschino will each seek $7,500 as Service Awards for the services they rendered to the Class Members.  See Ex. 2, ¶38(d)

9)     **Notice Program:**        Notice to the Class Members will proceed by mailing through first class mail (and email to the extent that Smithfield has this information readily available) to each Class Member.  Class Counsel anticipates that the vast majority of addresses of the Class Members are likely current because: (a) the events that led to the lawsuit only happened between 6 months and a year ago, (b) as an employer, Smithfield collects addresses for tax reporting, and (c) many of the Class Members still work at Smithfield.   The Settlement Administrator will also maintain an Internet site that will allow the Class Member to review important case documents (such as the Settlement Agreement) online.

Each of the 30,000+ notices will be modified to tell the specific Class Member to whom it is sent an estimate as to how much that person is anticipated to receive after costs, attorney fees, and other allowed expenses are paid.  The Parties' proposed notices to the FLSA Settlement Class, IMWL Settlement Class, and Claim Form are attached as Exhibit 5.  As set forth therein, it will disclose the amount that will be requested in attorney fees and other case-related costs and provide

the Class Members with instructions on how to object, opt-out, opt-in, and how to find useful case-related information on the Internet.

As indicated above, as the FLSA is an opt-in statute, FLSA Collective Members can join this case by filling out a 1 page form. To make it as easy as possible, FLSA Collective Members can opt-in on the Internet site maintained by the Claims Administrator. Or, if they prefer, they can send their form to the Claims Administrator through any of three different methods: mail, fax, or email.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

**A.  Class Action Settlement Approval Process**

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented. *Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* With this Motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement and to see if there are any objections.

10

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

As to the FLSA portion of the Settlement, because collective actions under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), require workers to affirmatively opt-in to the litigation, unlike Rule 23 class actions, they do not implicate due process concerns. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Thus, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

**B. The Criteria for Preliminary Settlement Approval Are Satisfied**

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

1.    **Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

Here, the FLSA Class Members are recovering the gross amount over their allegedly unpaid overtime before reductions for fees and other costs. Additionally, IMWL Class Members are receiving an *additional* gross amount of 100% of alleged unpaid overtime. Moreover, both

FLSA and IMWL Class Members will receive a minimum gross of $38.70 and FLSA Class Members may receive even more if less than 60% of the Net Settlement Fund is claimed. A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id.* A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Plaintiffs believe that this case is an excellent result for Class Members. Notably the amount FLSA Settlement Members will increase if less than 60% of the Net Settlement Fund remains after FLSA claims. See Ex. 2, ¶38(g)(3)(f).

Additionally, Plaintiffs had not yet obtained class certification. Defendants have significant defenses in this case that the compensation did not need to be included in the regular rate because it was a gift or discretionary bonus, that liquidated damages should not be awarded because the Federal Department of Labor had investigated the Responsibility Bonus at one facility and gave their blessing, and that class certification is improper based on differences among class members By settling these claims, the Plaintiffs are assured of a recovery. And, it is a considerable amount that will reach class members during this troubling time, when they need this money the most.

13

Although the amount of attorney fees and class representative service awards are often decided at the final approval hearing, Courts in the Northern District of Illinois routinely approve one-third of the settlement fund as attorneys' fees in FLSA collective actions settlements. *See, e.g., Castillo v. Noodles & Co.*, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016), at *3-4 (awarding one-third of a $3,000,000 settlement fund in FLSA overtime action); *Furman v. At Home Stores LLC*, No. 2017 WL 1730995, at 3-4 (N.D. Ill. May 1, 2017) (awarding one-third of $990,000 settlement fund in FLSA overtime action); *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016)  (awarding one-third of $2,000,000 settlement fund in FLSA overtime action); *Day v. NuCO2 Mgmt., LLC*, 1:18-CV-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) (awarding one-third of $900,000 settlement fund in case that was settled before filing suit); *Koszyk*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case). Consistent with the Seventh Circuit's admonition to award attorneys' fees that approximate the market rate, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001), these courts explain that one-third of the settlement fund is consistent with market rates in the Northern District of Illinois charged by experienced plaintiffs' counsel in contingent-fee wage and hour class and collective actions.

Courts in the Northern District of Illinois routinely award even larger service payments than the $7,500 requested here to named plaintiffs who perform similar actions to recover settlement funds on behalf of similarly situated employees in collective actions. *Furman*, 2017 WL 1730995, at *3 (approving $10,000 service award to named plaintiff in overtime collective action); *Briggs*, 2016 WL 7018566, at *2 (approving $12,500 service awards to named plaintiff in overtime collective action); *Castillo*, 2016 WL 7451626, at *2 (approving $10,000 service awards to named plaintiff in overtime collective action); *Koszyk*, 2016 WL 5109196, at *2 (same).

## 2.   Complexity, Length, and Expense of Further Litigation

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. The scale of these claims, potentially across 21 states and numerous entities and facilities around the nation would only severely complicate and lengthen the litigation.  Further, litigation would certainly result in disputed certification motions, dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig*., 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

## 3.   At This Preliminary Stage, There is No Opposition to the Settlement

The Plaintiffs support the settlement, as do their Counsel and Defendants. At this preliminary stage, Plaintiffs' Counsel is unaware of any opposition to the settlement.

## 4.   Opinion of Counsel

Plaintiffs' Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the

Settlement. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. See Declaration of David Fish attached as Exhibit 6.  It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals.

When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

Defense Counsel is likewise experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. It is likely that should this matter be fully defended up to and at trial, each class member would have *less* proven damages than what they are currently awarded in this settlement. However, fully litigating this matter would likely burden Defendants with attorney's fees and costs. It is in all parties' best interests to settle this matter to avoid the uncertainties and costs of continued litigation.

**5.      The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion.**

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether

the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair"). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). Here, the Parties negotiated for several months after the exchange and analysis of Defendants' payroll data. Further, the settlement was facilitated by Magistrate Judge Sunil R. Harjani after a nearly 10-hour settlement conference. This Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

## V. THE PARTIES' PROPOSED NOTICE PROGRAM

The notice procedure identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23 and informs both non-Illinois eligible FLSA Settlement Class Members and those who are both IMWL Settlement Class Members and eligible FLSA Settlement Class Members of their rights.

## VI. SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval approximately 150 days from the date of its Preliminary Approval Order

## VII. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

## A. PROPOSED SETTLEMENT CLASS ACTION DEFINITIONS

The Parties have agreed to certify the following classes for settlement purposes:

> The "FLSA Settlement Class" means the Named Plaintiffs and all current and former non-exempt employees of Smithfield Packaged Meats Corp., Smithfield Fresh Meats Corp., or Kansas City Sausage Company, LLC who worked anywhere in the U.S., including Illinois anytime during the Class Period, and received at least one Responsibility Bonus payment during the Class Period, and whose weekly pay did not include sufficient overtime to cover all of the overtime that would have been paid had the Responsibility Bonus been included in the regular rate and who file timely consent forms to join this Lawsuit.

> The "Illinois Settlement Class" is defined as the Named Plaintiffs and all current and former non-exempt employees of Smithfield Packaged Meats Corp., Smithfield Fresh Meats Corp., or Kansas City Sausage Company, LLC who worked in Illinois anytime during the Class Period, and received at least one Responsibility Bonus payment during the Class Period, and whose weekly pay did not include sufficient overtime to cover all of the overtime that would have been paid had the Responsibility Bonus been included in the regular rate and who do not file a Request for Exclusion.

> Exhibit 2 ¶15,19.

The Class is ascertainable, and it consists of those persons who are identified by personnel

number on Exhibits 1 and 2 to the Settlement Agreement.

**B.   The Illinois Rule 23 Class Meets All Four Requirements of FRCP 23(a).**

   **a.   Numerosity**

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable.  Fed. R. Civ. P. 23(a)(1).  As there are over 2,400 class members here, this easily meets the numerosity standard.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(concluding that "generally . . .  more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 336 (N.D. Ill. 2006)("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (18 members sufficient). As such, the numerosity standard is met.

   **b.   Commonality**

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there must be "questions of law or fact common to the class."  "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011).   "[F]or purposes of Rule 23(a)(2) even a single common question will do."  *Id.* at 2556.  "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified.  *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).  The common question here is whether Defendants improperly calculated the regular rate of pay when paying overtime to the FLSA and IWML Settlement Class Members.

   **c.   Typicality**

Plaintiffs meet the typicality requirement because all employees, including the named Plaintiffs, were under the same policies set by Defendants. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). Defendants utilize the same policy of calculating the regular rate of pay for overtime purposes. As such, Plaintiffs' claims arise out of the same course of conduct and the same payment practices.

### d. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." In the instant case, Plaintiffs were employees of Smithfield and alleged they suffered from overtime underpayments and were under the same allegedly unlawful practice as all other non-exempt employees. They have been cooperative throughout this litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiffs' claims pose no conflicts whatsoever with those of the other Class members because their claims and those of the entire Class turn on the existence and implementation of certain wage policies, which are alleged to have improperly calculated the regular rate for overtime purposes. Therefore, Plaintiffs' financial interests are not in conflict with those of other Class members. Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action

20

litigation is a factor favoring counsel's qualification, general litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Plaintiffs' counsel has substantial experience in employment litigation and class action litigation and has attached an affidavit in support of this settlement as Exhibit 4. *See, Wickens v. Thyssenkrupp Crankshaft Co., LLC*, 1:19-CV-6100, 2021 WL 267852, at *1 (N.D. Ill. Jan. 26, 2021)(recognizing "The Fish Law Firm, P.C.'s experience in litigating class action" cases as a reason for appointing it class counsel); *Pietrzycki v. Heights Tower Serv., Inc.,* 197 F. Supp. 3d 1007, 1019 (N.D. Ill. 2016)(noting Fish Law Firm's diligence in an FLSA class action).

**E.   Plaintiffs Meet the Requirements of FRCP 23(b)(2).**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs meet the requirements of Rule 23(b)(2).

**F.   Plaintiffs Meet the Requirements of FRCP 23(b)(3).**

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

**a. Predominance**

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g.*, *Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendants properly paid their employees. This will boil down to an analysis of whether the overtime rate was properly calculated and whether employees were properly paid.

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798, 12 c 1274 (N.D. Ill. 2014) (class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

**b. Superiority**

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the

desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate over 30,000 identical lawsuits in separate actions. Additionally, because of the limited time the Responsibility Bonus and Responsibility Pay was given, many individual claims are relatively minor and many would likely not seek an individual recovery. Because of the uniformity of the factual and legal claims of the Class members, it would be needlessly repetitive if the Class members were forced to prosecute their claims individually. A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties. With multiple claims, Defendants' legal expenses (owed to attorneys for both sides) could be greater than the overall damages at stake in the class action.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs pray for an order (in the form attached hereto as Exhibit 1):

    i.   Granting preliminary approval of the Settlement in this matter;

    ii.   Certifying the proposed FLSA Settlement Class and IMWL Settlement Class;

    iii.   Approving the form and content of the Notice to be sent to Class Members;

    iv.   Appointing Plaintiffs Canas and Meschino, as Class Representatives;

    v.   Approving the appointment of Plaintiff-Class Counsel;

    vi.   Scheduling a final fairness hearing approximately 120 days from the date of preliminary approval

    vii.   Granting such other relief as the Court deems appropriate under the circumstances.

Dated: March 10, 2021                          Respectfully Submitted,


                                        By: _____ /s/ John Kunze _____
                                               One of Plaintiffs' Attorneys


David Fish
Kim Hilton
John Kunze
The Fish Law Firm, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400